IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF ROBERT RUDOLPH | * | |
| HUTCHINS, Deceased, MALCOLM | * | |
| RICHARD HUTCHINS, Personal | * | |
| Representative, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:05CV01304 SWW |
| | * | |
| MOTEL 6 OPERATING L.P., | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Before the Court is defendant's motion for summary judgment to which plaintiff

responded.  For the reasons stated below, the motion is denied.

**Background**

On February 27, 2003, the deceased, Malcolm Richard Hutchins, checked into a Motel  6

in Conway, Arkansas.   He went there to meet his girlfriend, Olga Hillis.  Hillis began dating

Hutchins in September or October of 2001.  In April 2002, Hutchins moved from Clarksville,

Mississippi, where Hillis lives, to Fayetteville, Arkansas.  After Hutchins moved, he and Hillis

continued to meet in person two to three times each month.  Their typical rendezvous point was

Conway, and their routine was to meet at a motel on Friday and depart on Sunday.  They stayed

at the Conway Motel 6 more often than anywhere else.

Hutchins called Hillis on Thursday morning, February 27, 2003.  He was anxious and

wanted her to meet him in Conway.  He arrived in Conway around 3:00 p.m.  Hutchins called

Hillis around 5:00 p.m. and gave her his room number.  Hillis called Hutchins at 8:15 p.m. and

Case 4:05-cv-01304-RSW   Document 31   Filed 08/14/06   Page 2 of 8


told him she was on her way.  She testified that when she talked to Hutchins, he sounded like he was "feeling good" alcohol-wise.

Hillis arrived in Conway at 11:30 p.m.  She went straight to the motel.  Hillis knew what room Hutchins was in, and he told her he would leave a room key in his car, but his car was locked.  Hillis knocked on Hutchins' door but she did not hear anything.  She went to the front desk and got a key from the desk clerk.  She went back to the room, knocked on the door, and then opened it, but the security latch was on and she could not fully open the door.  She saw Hutchins lying on the bed with his hand on his head.  She thought he may have gotten drunk and passed out.  He appeared to be breathing normally.  Hillis decided to let Hutchins "sleep it off," and she went shopping for about an hour to an hour and a half.  She went back to the motel and called Hutchins from her cell phone but he did not answer.  She did not knock on the door because she did not want to awaken other guests.  Hillis called Hutchins a few more times and then fell asleep in her car.

Hillis woke up around 5:00 a.m. on February 28, 2003, when someone parked next to her shut an automobile door.  She could not find her cell phone so Hillis went back to the room, knocked, and opened the door as far as she could.  She called Hutchins' name but he did not respond.  He was in the same position, still had his hand on his forehead, and appeared to be breathing.  Hillis panicked and ran to the motel office.  She asked the clerk to call 911 because something was wrong; Hutchins would not answer the phone.

Hillis testified that the clerk told her she had to call her boss first, that he lived ten minutes away, and would be there shortly.[1]  Hillis testified it was at least thirty minutes before

---

[1]James Wright, general manager of the Conway Motel 6, testified that the night auditor who would have been working at this time was a male.  See Def's. Statement of Facts, Ex. A. at 20.  He also testified that,

the manager arrived.  Hillis stayed in the lobby while waiting on the manager, and when he arrived, they went to the room together.  When the manager opened the door, he told Hillis that Hutchins was dead.  The manager then instructed the clerk to call 911.

The coroner's office received the call at 7:00 a.m., arrived at the scene at 7:19 a.m., and pronounced Hutchins dead at 7:25 a.m.  The cause of death was hydrocodone intoxication.  The coroner's office lists the date of death as February 27, 2003, and states Hillis found Hutchins at around 6:45 a.m.

Plaintiff, the Estate of Robert Rudolph Hutchins, filed this lawsuit on July 27, 2005 in state court, alleging negligence.  Defendant removed the case to federal court on September 19, 2005.  Defendant asserts in its motion for summary judgment that there is no evidence that Motel 6 was aware Hutchins was in immediate danger and it was not unreasonable for the clerk to call the manager before calling 911.  Further, defendant contends plaintiff cannot prove that an alleged delay by Motel 6 employees in calling 911 was the proximate cause of Hutchins' death.  Plaintiff contends it has established a prima facie case of negligence and can show through expert testimony that defendant's negligence was more likely than not the proximate cause of Hutchins' death.

## Summary Judgment

Summary judgment should be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case.  *Celotex*

---

as general manager, he lived on the Conway Motel 6 property on February 27 and 28, 2003, and his apartment was located directly behind the front desk, about 20-25 paces from the reception area.  *Id.* at 24-25, 61.

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion.  *Id.*  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra,* at 322.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  *Anderson v. Liberty Lobby, Inc., supra,* at 255.

### Discussion

"To justify submitting a claim of negligence to the jury under Arkansas law, a plaintiff must show that the defendant breached a duty of care, that the plaintiff sustained damages, and that the defendant's negligence proximately caused the damages." *Stevenson v. Union Pacific R. Co.,* 354 F.3d 739, 744 (8th Cir. 2004).  Under Arkansas law, innkeepers owe a duty of ordinary care to their guests.  *Catlett v. Stewart,* 804 S.W.2d 699, 702 (Ark. 1991).  "[A] hotel is not an insurer of the safety of its guests, but . . . it is charged with the duty of taking all precautions for

the protection of its guests which reasonable prudence and ordinary care would suggest." *Id.* This duty does not arise until the hotel has knowledge of the special circumstances and conditions that create the danger. *See Rogers v. La Quinta Motor Inn,* 873 S.W.2d 551 (Ark. 1994)(no liability where invitee failed to present evidence that motel knew brown recluse spider was prevalent in area; neither motel or its employees had ever seen one on the premises; there was no evidence invitee or employees saw spider that bit her; and invitee unable to show spider that bit her was in her motel room as a result of motel negligence or whether she brought it into room); *Lewis v. Roescher,* 98 S.W.2d 956 (Ark. 1936)(hotel not liable when it had no notice that guest was sick or that the telephone furnished to the guest was defective).

Defendant argues that it had no notice of any problem with Hutchins until Hillis came to the front desk sometime after 5:00 a.m. on the morning of February 28, 2003. Hillis did not tell any Motel 6 employee how long Hutchins had been lying in his bed in the same position or provide any other information from which the desk clerk could reasonably conclude that Hutchins was in a medical emergency. Hillis testified she told the desk clerk she could not get into Hutchins' room and could not get him to answer the telephone. She asked the clerk to call 911 because something was wrong. Defendant contends there is nothing in the record to establish that Motel 6 was on notice that Hutchins was in mortal danger and time was of the essence. It points out that Hillis never asked to use the motel telephone to call 911 herself, never attempted to locate her cell phone to make a call to 911,[2] and never left the lobby as she waited for the manager to come.

---

[2]Hillis said she later found her cell phone under the seat of her car. *See* Def's. Statement of Facts, Ex. C at 43.

Plaintiff argues that the testimony by the general manager of Motel 6 that it was a mistake, wrong, and morally negligent for motel personnel not to call 911 establishes a prima facie case of negligence on the part of Motel 6.

Negligence means the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence. *Ouachita Wilderness Institute, Inc. v. Mergen,* 947 S.W.2d 780, 784 (Ark. 1997).   To constitute actionable negligence, it is not necessary that the actor foresee the particular injury which occurred, only that the actor reasonably foresee an appreciable risk of harm to others.  *Jordan v. Adams,* 533 S.W.2d 210, 212 (Ark. 1976).   In order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed the plaintiff under the circumstances surrounding them. *Shannon v. Wilson,* 947 S.W.2d 349 (Ark. 1997).

The Court finds there are genuine issues of material fact as to whether the Motel 6 employee acted in a negligent manner.  The evidence raises a jury question as to how a reasonably careful person would act under the circumstances.

Proximate cause "means a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred."  AMI Civ.501 (2006). Defendant submits the affidavit of Dr. Simmons who says there is no way to determine within a reasonable degree of medical certainty when Hutchins died.  *See* Def's. Statement of Facts, Ex. D.  Defendant argues that because no one can say when Hutchins died, plaintiff cannot prove with any degree of certainty that the outcome would have been different if the Motel 6 personnel had responded by immediately calling 911.  Plaintiff submits the affidavit of Dr. Pittman, who

6

says that if one believes Hillis' testimony that Hutchins was still breathing when she last saw him, it is a possibility that if 911 had been called immediately, Hutchins' life could have been saved. *See* Def's. Br. in Supp. Resp.to Mot. Summ. J., Ex. A.  Dr. Pittman states that "if EMTs had been called, they would have likely have put out an immediate Code 3 message, and they would have been in an ambulance, with lights and sirens working, en route to the motel." *Id.* at ¶ 7.  "Mr. Hutchins was breathing when Ms. Hillis last saw him alive, and had there been a Code 3 alert, more likely than not, medical personnel would have been to that motel room within 10 minutes.  In situations like Mr. Hutchins', the key to stopping the emergency is always, "early response."  As long as someone is breathing, their heart is pumping, and they are considered alive in the field." *Id.* at ¶¶ 8 & 9.

"'Proximate causation is usually an issue for the jury to decide in a negligence action, and when there is evidence to establish a causal connection between negligence of the defendant and damage to the plaintiff, it is proper for the case to go to the jury; in other words, proximate causation becomes a question of law only if reasonable minds could not differ.'" *Stevenson v. Union Pac. R. Co.,* 354 F.3d at 744-45 (quoting *Barriga v. Ark. and Mo. R.R.,* 87 S.W.3d 808, 810 (Ark App. 2002).

Viewing the evidence in the light most favorable to plaintiff, the Court finds there is a genuine issue of material fact as to whether defendant's actions were the proximate cause of Hutchins' death.

## Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [docket entry 13] is denied.

DATED this 14th day of August 2006.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE